IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **FGDI, L.L.C.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 03-0588-CG-C |
| | ) |
| **M/V LORELAY, and her engines, tackle,** | ) |
| **furniture and appurtenances, etc., in rem,** | ) |
| | ) |
| **Defendant,** | ) |

## ORDER

A bench trial was held and testimony was taken in this matter on December 13-14, 2004, and judgment was entered on September 16, 2005. (Doc. 48). The parties appealed and the United States Court of Appeals for the Eleventh Circuit vacated the judgment and remanded the case for reconsideration and recalculation of damages. (Doc. 60). The parties briefed the issue of damages based on the finding of the Eleventh Circuit, advising the court of their proposed calculations. (Docs. 64, 65, 68, 69). After a thorough consideration of the Eleventh Circuit's instructions and the briefs of the parties, the court finds that FGDI, L.L.C. is entitled to a total damages award in the amount of **$66,336.31**

## DISCUSSION

Plaintiff, FGDI, claims damages suffered when the M/V LORELAY sustained a crack in her bulkhead causing an oil spill that resulted in the closing of FGDI's loading berth until the area could be cleaned. The loading of three vessels was allegedly delayed by the oil spill. The Eleventh Circuit found that the TAMPICO ALTO was delayed just over two days, the ANGELIC PEACE was delayed approximately one day and 18 hours, and the PRINCESS VANYA was

delayed one day and 17 hours as a result of the spill. (Doc. 60, pp. 5-7).   The parties dispute the amount of damages attributable to these delays.  Specifically, the parties dispute the amount of damages associated with: 1) dispatch and demurrage, 2) elevator overtime, 3) railcar delay costs for the CN and BNSF lines, 4) private leased railcar delay costs, and 5) state docks rail delay charges.  The parties agree that the amount of interest damages for delayed payments is approximately $764.[1]  Thus, the court will award FGDI interest in the amount of **$764.00** and will only discuss the disputed damage amounts below.

### 1. Dispatch and Demurrage

Testimony at trial indicated that FDGI lost one day of dispatch each for the PRINCESS VANYA and the ANGELIC PEACE, the amount originally claimed by FDGI. [2]   The dispatch rate for the PRINCESS VANYA was $6,250.00 per day and the dispatch rate for the ANGELIC PEACE was $4,750.00 per day.  The parties agree that FGDI should be awarded two days of demurrage for the TAMPICO ALTO at the rate of $3,000 per day, for a total of $6,000.00.  Thus, the total amount of dispatch and demurrage to be awarded is **$ 17,000.00**.[3]

---

[1] FGDI calculates the amount of interest to be awarded as $764.63 and the LORELAY calculates the interest amount as $763.85 - a mere 78 cents apart.  The court finds it unnecessary to belabor this de minimis difference.

[2] The court notes that FDGI now argues that it is entitled to demurrage for these two vessels which would result in a larger dispatch and demurrage award than it originally claimed. The court finds that the trial testimony does not support such an award and that the directive of the Eleventh Circuit does not demand or even suggest that such an award would be appropriate. FGDI's president, Steve Speck, testified that FGDI's actual expense resulting from the delay to these two vessels was one day of dispatch for each vessel. ( Transcript pp. 41-45).

[3] This amount consists of $6,250.00 dispatch for the PRINCESS VANYA, plus $4,750.00 dispatch for the ANGELIC PEACE, plus $6,000.00 demurrage for the TAMPICO ALTO.

**2. Elevator Overtime**

As stated by the Eleventh Circuit, the testimony at trial was that, prior to the oil spill, FGDI expected to load the ANGELIC PEACE in approximately four days. It was unknown how many overtime shifts would have been required if ANGELIC PEACE had been loaded as originally planned. Using 5 overtime shifts, the ANGELIC PEACE was actually loaded in 3 days, 20 hours, only 4 hours short of the estimated four days. So, significant overtime would have been necessary to load the ship in the amount of time FGDI expected, even if no oil spill had occurred. The Eleventh Circuit instructed this court to

> reconsider and, if necessary, recalculate the damages for overtime in light of the above discussions of vessel delay and actual time necessary to load ANGELIC PEACE and taking into account that the delay caused by the spill might (or might not) have caused FGDI to pay for weekend and evening work rather than weekday work. The damages attributable to overtime are the difference between the cost of the labor that would have been necessary to load ANGELIC PEACE on December 13 through December 17 and the actual cost of the labor used to load ANGELIC PEACE (on December 15 through December 19).

(Doc. 60, p. 9).

December 13, 2002 was a Friday. Thus, loading from December 13 through December 17 would have necessitated loading on a Saturday and a Sunday. The vessel was actually loaded from Sunday, December 15 through Thursday, December 19. Thus, the actual loading included one less weekend day. Weekend overtime is more expensive than weekday overtime.[4] Since the vessel was only loaded 4 hours less than it was expected to be loaded if there had been no spill and the

---

[4] Under FGDI's general terms and conditions for vessels using its facilities, the tariff rate for overtime is $975 per hour on Monday through Friday and $1,075 per hour on Saturday, Sunday, and holidays. (Bulow Depo. pp. 84-85). It also appears that two overtime shifts are necessary to work an extended weekend day, since there is no regular shift on weekends, whereas only one would be used to extend a weekday shift.

actual loading included one less weekend day, the court finds that FGDI has not shown that it incurred more labor costs loading the ANGELIC PEACE than would have been necessary if there had been no spill.  Thus, the court finds that the overtime award should be **$ 0.**

### 3. Delay and Holding Charges for CN and BNSF

The Eleventh Circuit found that the record demonstrated that most of the stopped railcars were carrying soybeans and could not be moved until ANGELIC PEACE had been loaded with soybeans. (Doc. 60, p. 10).  "Thus, if there had been no oil spill and Angelic Peace had been able to load as soon as she was ready, the railcars still would have been delayed from the date they were stopped until ANGELIC PEACE was loaded." (Id.).  The Eleventh Circuit directed that this court recalculate the delay on the Canadian National (CN ) and Burlington Northern and Santa Fe (BNSF) lines "by determining how much longer the rail cars were delayed than they would have been had ANGELIC PEACE been able to move into the loading berth when she was ready to do so, at 1230 December 13." Id.

Mr. Barrie testified at trial that the daily storage cost for the CN line was $50 per car.  The daily storage cost for the BNSF line was $35 per car.  Both report that the invoices at issue consist of two CN invoices for a total of 217 cars and two BNSF invoices for a total of 218 cars.  Thus, the amount of CN holding charges per day is $ 10,850.00 (217 cars x $50) and the amount of BNSF charges per day is $ 7,630.00 (218 cars x $50).

The parties agree that the amount of charges for holding the CN and BNSF railcars per day is $18, 480, but dispute the number of days delay that are attributable to the oil spill.  FGDI argues that the railcars were delayed 6 days because of the oil spill: from December 13 when the Eleventh Circuit states the time period should begin, until December 19, when FGDI asserts ANGELIC

PEACE began loading. However, the Eleventh Circuit found that the ANGELIC PEACE was only delayed one day and 18 hours. As the Eleventh Circuit explained:

> Then, when ANGELIC PEACE passed inspection at 1230 December 13, it would have been able to proceed to the loading berth immediately. Instead, ANGELIC PEACE waited for TAMPICO ALTO to complete loading and exit the loading berth, actually moving to the loading berth beginning at 0505 December 15. Thus, as a result of the oil spill, ANGELIC PEACE was delayed approximately one day and 18 hours.

(Doc. 60, p. 6). The testimony at trial was that the ANGELIC PEACE berthed at the grain elevator load berth at 0630 on December 15 and completed loading at 2330 hours on December 18. (Transcript p. 76). The time from when the vessel was ready to proceed to berth to when the vessel actually began moving to berth, after being delayed by the oil spill, is 1.75 days. Because the ANGELIC PEACE was delayed in loading by 1.75 days, the court finds it appropriate to award charges associated with 1.75 days of holding the railcars. The combined daily charges of $18,480 multiplied by 1.75 days, results in a charge of **$32,340.00**.

### 4. Private Leased Railcars, and  5. State Dock Charges

The parties originally came up with different calculations and arguments regarding these charges. However, the LORELAY's calculations actually result in a larger award for FGDI than calculated by FGDI.[5] Thus, FGDI appears to have abandoned its figures in favor of the LORELAY's. Accordingly, the court will award FGDI the amounts calculated by the LORELAY which consist of $2,372.74 per day for private leased railcar charges and $5,623.47 per day for state dock charges for a total of $7,996.21 per day. Using a delay of 2.03 days, the total amount to be awarded for the private railcar charges and the state dock charges is **$16,232.31**.

---

[5] Under FGDI's calculations, the private railcar costs amount to $11,246.94 and the state dock charges are $4,008.43, for a total of $15,255.37.

## **CONCLUSION**

For the reasons stated above, FGDI, L.L.C. is awarded damages in the following amounts:

| | |
|---|---|
| Vessel dispatch and demurrage: | $17,000.00 |
| Interest on delayed payments: | $    764.00 |
| Elevator overtime: | $ 0 |
| CN and BNSF railcar charges: | $32,340.00 |
| Private railcar costs and State Docks charges: | $16,232.31 |
| **TOTAL:** | **$66,336.31** |

**DONE** and **ORDERED** this 23rd day of May, 2007.

   /s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE